**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------x
FEDERAL HOUSING FINANCE          :
AGENCY, AS CONSERVATOR FOR THE:
FEDERAL HOME LOAN MORTGAGE       :
CORPORATION,                     :
                                 :
                Plaintiff,       :   No. 11 Civ. 7010 (DLC)
         v.                      :
                                 :
ALLY FINANCIAL INC., f/k/a GMAC, :
LLC, et al.,                     :
                                 :
                Defendants.      :
                                 :
---------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION**
**TO PLAINTIFF'S MOTION FOR REMAND**

MAYER BROWN LLP
1675 Broadway
New York, NY  10019-5820
Telephone:  212-506-2500

*Attorneys for Ally Financial Inc., GMAC Mortgage Group, Inc., Residential Capital LLC, GMAC-RFC Holding Company, LLC, Residential Funding Company, LLC, Ally Securities, LLC, Residential Asset Mortgage Products, Inc., Residential Asset Securities Corporation, and Residential Accredit Loans, Inc.*

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allstate Insurance Co. v. Ace Securities Corp.*, No. 11 Civ. 1914,
2011 WL 3628852 (S.D.N.Y. Aug. 17, 2011) ........................................................ 10, 14, 15, 16

*Allstate Insurance Co. v. Credit Suisse Securities (USA) LLC*, No. 11 Civ. 2232, 2011
U.S. Dist. LEXIS 120734 (S.D.N.Y. Oct. 19, 2011) .................................................................. 11

*Ann Arbor Employees' Retirement System v. Citigroup Mortgage Loan Trust Inc.*,
572 F. Supp. 2d 314 (E.D.N.Y. 2008) ................................................................................... 9, 10

*In re Balensweig*, 410 B.R. 157 (S.D.N.Y. 2008) ........................................................................ 11

*Belcufine v. Aloe*, 112 F.3d 633 (3d Cir. 1997) ............................................................................ 13

*In re Boston Regional Medical Center*, 410 F.3d 100 (1st Cir. 2005) ......................................... 14

*California Public Employees Retirement System v. Worldcom, Inc.*,
368 F.3d 86 (2d Cir. 2004) ........................................................................................................ 20

*In re Canion*, 196 F.3d 579 (5th Cir. 1999) ................................................................................. 15

*In re Carter*, 618 F.2d 1093 (5th Cir. 1980) ................................................................................ 21

*Celotex Corp. v. Edwards*, 514 U.S. 300 (1995) .............................................................. 9, 13, 15

*Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, 337 B.R. 22
(S.D.N.Y. 2005) ......................................................................................................................... 16

*In re Chateaugay*, 111 B.R. 67 (S.D.N.Y. 1990) ......................................................................... 13

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) ................. 17

*In re Cross Media Marketing Group, Inc.*, 367 B.R. 435 (S.D.N.Y. 2007) ................................. 15

*Eriksen v. Moore Mill & Lumber Co*, 157 F. Supp. 888 (D. Or. 1958) ....................................... 23

*In re Exide Technologies*, 544 F.3d 196 (3d Cir. 2008) ......................................................... 10, 11

*In re Extended Stay Inc.*, 435 B.R. 139 (S.D.N.Y. 2010) ............................................................. 10

*Federa; Home Loan Bank of Chicago v. Banc of America Securities LLC*,
448 B.R. 517 (C.D. Cal. 2011) .................................................................................................. 10

*Federal Home Loan Bank of Seattle v. Deutsche Bank Securities, Inc.*,
736 F. Supp. 2d 1283 (W.D. Wash. 2010) ................................................................................ 10

# TABLE OF AUTHORITIES
(cont'd)

**Page**

*In re Refco, Inc. Securities Litigation*, 628 F. Supp. 2d 432 (S.D.N.Y. 2008) .......................... 15, 18

*Stichting Pensioenfolds ABP v. Countrywide Financial Corp.*,
447 B.R. 302 (C.D. Cal. 2010) ................................................................................................ 10

*Trustees of the Masonic Hall & Asylum Fund v. PricewaterhouseCoopers LLP*,
No. 08 Civ. 10495, 2009 WL 290543 (S.D.N.Y. Feb. 5, 2009) .............................................. 18

*Warthman v. Genoa Township Board Of Trustees*, 549 F.3d 1055 (6th Cir. 2008) ..................... 23

*Whitaker v. American Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001) .......................................... 7

*Wilson v. Doss*, 2009 WL 2567950 (M.D. Ala. Aug. 14, 2009) ................................................... 21

*Winstar Holdings v. Blackstone Group, L.P.*,
No. 07 Civ. 4634, 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007) ........................................... 17

*Woodford v. Community Action Center*, 239 F.3d 517 (2d Cir. 2001) ........................................ 19

*In re WorldCom, Inc. Securities Litigation*, 293 B.R. 308 (S.D.N.Y. 2003) ........ 7, 9, 13, 17, 18, 19

**STATUTES AND RULES**

12 U.S.C. § 1452 .................................................................................................... 6, 16, 18, 20, 23

15 U.S.C. § 77v(a) ..................................................................................................................... 2, 22

28 U.S.C. § 1331 ................................................................................................................ 16, 18, 23

28 U.S.C. § 1334 ............................................................................................................................ 9, 17

28 U.S.C. § 1345 ................................................................................................................................ 16

28 U.S.C. § 1349 ................................................................................................................................ 16

28 U.S.C. § 1441 ...................................................................................................... 2, 6, 20, 21, 22, 23

28 U.S.C. § 1446 .................................................................................................................................. 7

28 U.S.C. § 1452 ........................................................................................................................ 6, 9, 16

17 C.F.R. § 229.1110(a) (2007) .......................................................................................................... 8

Fed. R. Bankr. P. 9006(b) ................................................................................................................. 13

## PRELIMINARY STATEMENT

This is one of well over a dozen cases plaintiff has filed against the depositors, sponsors, and underwriters of certain residential mortgage-backed securities ("RMBS") offerings. Plaintiff elected this federal forum for the vast majority of its substantially identical complaints (thirteen), but hedged that bet by filing in state court a small number of additional complaints (four). This action belongs, however, in federal court. Plaintiff's motion for remand fails to distinguish this case from the many similar cases in which federal courts – including courts in this Circuit – have found "related to" bankruptcy jurisdiction. The burden of establishing "related to" jurisdiction is not onerous; the Second Circuit, like most of the other federal circuits, will find such jurisdiction as long as "the action's outcome *might* have *any conceivable effect* on the bankrupt estate." *Parmalat Capital Fin. Corp. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) (emphasis added). Because plaintiff's claims are explicitly linked to alleged misconduct by mortgage loan originators and sellers that are in bankruptcy proceedings, and because defendants have valid contractual rights for indemnity and other relief for such misconduct, the "any conceivable effect" standard easily is satisfied in this case. Numerous courts both within and outside this Circuit have held that this standard is satisfied where a defendant in the allegedly related action has an actual or merely a potential indemnity claim against even a single a bankrupt originator.

Plaintiff thus focuses its efforts on arguing that (1) defendants have failed to "prove" the existence of "related to" jurisdiction (to the point of insinuating that defendants included false information in their Notice of Removal); and (2) this Court should abstain even if "related to" jurisdiction exists. Neither contention is availing. Defendants were not required to "prove" the existence of jurisdiction in their Notice of Removal any more than a plaintiff is required to "prove" the merit of its claims in a complaint. Defendants do, however, more than adequately establish jurisdiction in connection with this opposition. Nor is there any sound reason for this

## **STATEMENT OF FACTS**

Plaintiff, the Federal Housing Finance Agency, is a U.S. government agency created to oversee two federally chartered shareholder-owned corporations: the Federal National Mortgage Association, commonly known as "Fannie Mae," and the Federal Home Loan Mortgage Corporation, commonly known as "Freddie Mac." Compl. ¶¶ 11-12. On September 2, 2011, plaintiff filed this action in New York state court, bringing eight causes of action against defendants in connection with residential mortgage-backed securities ("RMBS") allegedly purchased by Freddie Mac between September 2005 and May 2007: three claims under the federal securities laws, two claims under the Virginia Securities Act, and three common law claims under unspecified state law for fraud, aiding and abetting fraud, and negligent misrepresentation. Compl. ¶¶ 1-2. Plaintiff has sued two sets of defendants: (1) the "GMAC/RFC Defendants," comprising Ally Financial, Inc., formerly known as GMAC, LLC and before that as General Motors Acceptance Corp., and its subsidiaries GMAC Mortgage Group, Inc., Residential Capital LLC, GMAC-RFC Holding Company, LLC, Residential Funding Company, LLC ("GMAC-RFC"), Ally Securities, LLC, Residential Asset Mortgage Products, Inc., Residential Asset Securities Corporation, and Residential Accredit Loans, Inc.; and (2) the independent "Underwriter Defendants," comprising J.P. Morgan Securities LLC, Credit Suisse Securities (USA) LLC, RBS Securities, Inc., Citigroup Global Markets Inc., Barclays Capital, Inc. UBS Securities LLC, and Goldman, Sachs & Co.

On the same day that this action was filed, plaintiff filed thirteen other lawsuits in federal court, all alleging substantially similar (and frequently word-for-word identical) claims against

Ex. 31 at 4, Ex. 53 at 5-7, Ex. 69 at 2-3, Ex. 88 at 4-6. Both the Client Guide and the Correspondent Manual changed from time to time, but at all relevant times incorporated certain representations by the seller/originator relating to the origination and underwriting of the mortgage loans, including that the loans had been underwritten to certain standards and that all of the information provided by the originator/seller in support of the loan was true, complete, and accurate. Blaschko Decl. ¶¶ 12-13 & Ex. I §§ A202(A), (D), (T), (KK), (II); Ex. J §§ I, XIII.b(2), (3), (5), (16), (20). In addition, loan sales were transacted through longer individual loan purchase and sale agreements that set out similar underwriting-related representations and provided similar repurchase and indemnification rights. Blaschko Decl. ¶¶ 4, 11 & Exs. B & H at §§ 3.3(a), (oo), (tt), (ww), 3.4, 4.1. The fundamental premise of this lawsuit is that the representations and warranties by the originators/sellers, as restated in the offering materials for the RMBS, were false. *See* Compl. ¶¶ 75-76, 94, 105-06.

The agreements between the GMAC/RFC Defendants and the originators/sellers also provided that a breach of these representations triggered several non-exclusive remedies, including (1) the right to demand that the originator/seller repurchase the loan(s) and (2) the right to demand that the originator/seller indemnify the GMAC/RFC Defendants for the costs of any litigation based on or resulting from the breach, including any ultimate monetary judgment against the GMAC/RFC Defendants. Blaschko Decl. Exs. B & H at §§ 3.4, 4.1; Ex. I §§ A210, A212; Ex. J §§ XIV.a, XIV.b.

A number of the originators/sellers that provided loans for the RMBS in this case, and entered into the agreements described above, have filed for bankruptcy. In particular, GMAC-RFC has contractual indemnification rights under those documents with the following bankrupt originators: Alliance Bancorp, ComUnity Lending, Inc., Fieldstone Mortgage Company, First

5

Procedure] 8(a)," it did so to make clear that "liberal rules of pleading" apply. H.R. Rep. No. 100-889 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6032; *see also Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 205 (2d Cir. 2001) (finding statutory requirement satisfied where removal notice stated that jurisdiction was proper based upon "diversity of citizenship between the plaintiff and defendants and [a matter] in controversy exceed[ing] the sum of $75,000, exclusive of interests and costs") (substitutions in original). Similarly, plaintiff's censure of defendants for "nakedly assert[ing]" "potential indemnification claim[s]" without identifying specific indemnity provisions or providing estimates of potential recovery (*see* Pl.'s Br. at 14) seeks to impose a pleading burden well in excess of the statutory requirement. Essentially, plaintiff conflates two distinct requirements: (i) the requirement that a Notice of Removal state the grounds for removal, and (ii) the requirement that a court asked to exercise "related to" bankruptcy jurisdiction over defendants' indemnification claims against a debtor find "a reasonable legal basis" for the claim. *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 318 (S.D.N.Y. 2003) (internal quotation marks omitted). The former certainly was satisfied by defendants' 15-page, 47-paragraph Notice of Removal; the latter is demonstrated by the contents of and exhibits to this brief.

***Second,*** plaintiff declares that because "only five of the 25 originators/sellers" identified in the Notice of Removal "even originated or sold loans underlying the" RMBS, "only five [bankruptcy] proceedings are even potentially relevant." Pl.'s Br. at 13. This is incorrect. All 25 "Bankrupt Originators/Sellers" identified in the Notice of Removal in fact did provide loans for the securitizations in this case, in quite substantial numbers. Blaschko Decl. ¶ 3 & Ex. A.

Plaintiff's counsel has gone to great lengths (*see* Mark Decl. ¶¶ 4-68) to establish that 20 of the Bankrupt Originators/Sellers are not identified in the prospectus supplements. That these

courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (1984)).

Consistent with this mandate, "[t]he scope of 'related to' bankruptcy jurisdiction has been broadly interpreted by the Second Circuit." *Ann Arbor Employees' Ret. Sys. v. Citigroup Mort. Loan Trust Inc.*, 572 F. Supp. 2d 314, 317 (E.D.N.Y. 2008). Jurisdiction does not depend on or require the debtor's being named as a party to the lawsuit. *Id.* (citing Southern District of New York and District of Connecticut cases). Rather, the Second Circuit has held that "related to" bankruptcy jurisdiction exists "if the action's 'outcome *might* have *any conceivable effect* on the bankrupt estate.'" *Parmalat Capital Fin. Corp.*, 639 F.3d at 579 (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992)) (emphasis added). *See also In re Worldcom, Inc. Sec. Litig.*, 293 B.R. at 317 ("An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.") Jurisdiction exists even if the case's conceivable effects are directed at a single bankruptcy. *See, e.g., Ann Arbor Employees' Ret. Sys*, 572 F. Supp. 2d at 317 (finding "related to" bankruptcy jurisdiction on the basis of a single loan originator's bankruptcy).

A number of federal courts, including courts in this Circuit, have had occasion to consider the issue of "related to" bankruptcy jurisdiction in the specific context of RMBS litigation. A significant majority have held that the "conceivable effect" standard is satisfied where a defendant in the allegedly related action has an actual or even a potential indemnity claim against a bankrupt originator. *See, e.g., Allstate Ins. Co. v. Ace Sec. Corp.*, No. 11 Civ.

9

Nothing in that case *limits* the availability of "related to" jurisdiction to circumstances where a proof of claim has been filed. The language plaintiff quotes from *In re Balensweig*, 410 B.R. 157, 153 (S.D.N.Y. 2008), is a parenthetical that purports to characterize *In re Johns-Manville Corp.*, 517 F.3d 52 (2d Cir. 2008), a case in which the Second Circuit simply held that a district court lacked subject matter jurisdiction to enjoin claims against a bankrupt entity's primary insurer that were premised exclusively on the insurer's own independent misconduct and did not stake any claim to any insurance policy proceeds held in the *res* of the bankrupt estate. And, *Allstate Insurance Co. v. Credit Suisse Securities (USA) LLC*, No. 11 Civ. 2232, 2011 U.S. Dist. LEXIS 120734 (S.D.N.Y. Oct. 19, 2011), is inconsistent both internally and with established case law. Notwithstanding the well-established rule that it is not "appropriate for a court to speculate on the viability of any ... future attempt to" file a late proof of claim, *id.* at *5, in concluding that the defendants' contractual indemnification claims could have no conceivable effect on the indemnitors' bankruptcies, the court necessarily did just that. The court could not possibly have reached its conclusion *without* concluding – purely on the basis of speculation – that the claims could not possibly be allowed.

In any event, Plaintiff *admits* – albeit begrudgingly – that defendant GMAC-RFC *has* filed "relevant" proofs of claim "that could entitle [defendants] to indemnification from those debtors arising from the claims here." Pl.'s Br. at 6. Specifically, as plaintiff acknowledges, GMAC-RFC already has filed proofs of claim grounded on misrepresentations about the mortgage loans against Alliance Bancorp for $1,429,777.36, and against People's Choice for $42,079,121.08. Pl.'s Br. at 6-7.[5] The Alliance Bancorp claim relies on a Master Mortgage

---

[5] These proofs of claim were filed long before plaintiff instituted this action, and accordingly do not seek indemnification in connection with plaintiff's claims. As plaintiff recognizes, however, both the repurchase and indemnification remedies are triggered by a breach of the originator's/seller's representations and warranties, and the grounds for RFC's repurchase claims concern the same kinds of misrepresentations at issue in this case.

11

has mischaracterized at least one other relevant proof of claim. The claim filed by RFC in the ComUnity bankruptcy is labeled as for "services performed," but the attachments clarify that the basis of the claims (which total $1,790,499.38) is "repurchase exposure." Mark Decl. Ex. 48. As plaintiff concedes, neither the People's Choice claim, the Alliance Bancorp claim, nor the ComUnity claim has been "fixed." Pl.'s Br. at 8.

Equally important, the GMAC/RFC Defendants retain valid contractual indemnification rights against other bankrupt originators/sellers, even where a relevant proof of claim has not been filed. A bankruptcy court has discretion to allow a creditor to file a proof of claim "at any time," even after the confirmation of a reorganization or liquidation plan. Fed. R. Bankr. P. 9006(b); *see also Pioneer Inv. Servs. v. Brunswick Assocs.*, 507 U.S. 380, 388-95 (1993).

The courts consistently have held that "related to" jurisdiction attaches without regard to whether the bankruptcy court will allow a claim. *See In re Chateaugay*, 111 B.R. 67, 76 (S.D.N.Y. 1990); *Belcufine v. Aloe*, 112 F.3d 633 (3d Cir. 1997); *Celotex*, 514 U.S. at 309-10). As this Court has observed, "[w]hether a claim ultimately will be allowed is one for none other than the bankruptcy court. ... The *potential* alteration of the liabilities of the estate and change in the amount available for distribution to other creditors is sufficient to find that litigation among non-debtors is 'related to' the bankruptcy proceeding." *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. at 323 (emphasis added).

Here, GMAC-RFC either has filed what plaintiff admits are relevant proofs of claim, or has non-contingent, non-speculative contractual indemnification claims against several bankrupt originators/sellers for potentially significant amounts. The indemnification claims are not speculative or attenuated; to the contrary, they are grounded in GMAC-RFC's contractual relationships with the originators/sellers. GMAC-RFC's claims against Alliance Bancorp,

13

undiminished after plan confirmation," because "'the specter of endless bankruptcy jurisdiction and a kindred concern about unfairly advantaging reorganized debtors' does not exist." *Id.* at 442 (quoting *In re Boston Reg'l*, 410 F.3d at 107). Accordingly, the courts of this Circuit apply the "any conceivable effect" test to Chapter 11 liquidation cases both pre- and post-plan confirmation. *See, e.g., In re Refco, Inc. Sec. Litig.*, 628 F. Supp. 2d at 442; *In re Cross Media Mktg. Grp., Inc.*, 367 B.R. 435, 444 (S.D.N.Y. 2007); *see also In re Gen. Media, Inc.*, 335 B.R. at 74 n.7 (noting *In re Boston Regional*'s holding that "post-confirmation jurisdiction in a liquidating chapter 11 case is greater" and explaining that "[t]he General Media plan was not a liquidating plan, and the reorganized debtors have continued their businesses").

Plaintiff cites no controlling authority or compelling justification for its argument that liquidation proceedings under Chapter 7 should be treated differently. Although the Supreme Court in *Celotex* remarked in *dicta* that "[t]he jurisdiction of bankruptcy courts *may* extend more broadly in" Chapter 11 reorganization cases than in Chapter 7 liquidation cases, *see Celotex*, 514 U.S. at 310 (emphasis added), "no distinct standard for 'related to' jurisdiction under Chapter 7 exists in the caselaw." *Allstate Ins. Co.*, 2011 WL 3628852, at *6. *See also In re Canion*, 196 F.3d 579, 586-87 (5th Cir. 1999) (applying "any conceivable effect" standard in Chapter 7 proceeding). The "conceivable effect" test thus applies to the Court's exercise of "related to" jurisdiction over the GMAC/RFC Defendants' contractual indemnification claims against the originators/sellers that have filed for Chapter 7.

Even if a "close nexus" test applied – and it does not – this Court's exercise of jurisdiction would remain appropriate. In *Allstate*, the court held that even under a "close nexus" standard, indemnification agreements equal in scope to the provisions of the Client Guide, the

15

However, the courts of this Circuit recognize that "federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them' ... and may abstain for only a few 'extraordinary and narrow exception[s].'" *In re WorldCom Sec. Litig.*, 293 B.R. at 332 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976)); *see also Winstar Holdings v. Blackstone Grp., L.P.*, No. 07 Civ. 4634, 2007 WL 4323003, at *5 (S.D.N.Y. Dec. 10, 2007) ("Federal courts should be sparing in their exercise of discretionary abstention.") (internal quotation and citation omitted). Plaintiff fails to present any such circumstances.

Plaintiff offers what it characterizes as five factors that "overwhelmingly favor abstention": (1) this case "will have no impact on" the estates of any bankrupt originator or seller; (2) "state law issues predominate"; (3) "the degree of relatedness to any bankruptcy proceeding is extremely remote at best"; (4) the "remote connection" between this lawsuit and the bankruptcy proceedings indicate that defendants "are simply forum shopping"; and (5) "abstention would further the interests of comity." Pl.'s Br. at 18. None of these justifications is valid. Preliminarily, the first, third, and fourth reasons are simply three different reiterations of plaintiff's contention that this case fails the "conceivable effect" and/or "close nexus" tests. As demonstrated above and in the materials supporting this brief, neither the facts nor the law support plaintiff's position.

Plaintiff's second argument – that "state law issues predominate" – is nonsensical on its face. This is a lawsuit brought by a federal agency (plaintiff) against defendants that are majority-owned by the federal government (the GMAC/RFC Defendants), primarily asserting claims under three separate sections of the Securities Act of 1933. This Court has original jurisdiction over plaintiff's federal securities claims pursuant to 28 U.S.C. § 1331, and over the

based on comity concerns"; (2) the inclusion of federal securities law claims mean that "[i]mportant federal interests counsel against abstention"; and (3) the existence of multiple similar actions meant that "it is beyond cavil that judicial economy and efficiency are best served by exercising the jurisdiction that so clearly exists" and by managing "the motion practice and discovery process" through "consolidation in one court." *Id.*, 293 B.R. at 332-33. *See also Woodford v. Cmty. Action Ctr.*, 239 F.3d 517, 522 (2d Cir. 2001) ("Even where there are some state-law issues, 'the presence of federal-law issues must always be a major consideration weighing against surrender'" of federal jurisdiction.) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983)).

Equally important, none of the considerations at issue in the remanded RMBS cases cited by plaintiff apply here. *See* Pl.'s Br. at 18-19 & n. 22. In none of those cases was the plaintiff a federal agency representing the interests of another federal agency, nor did there exist multiple alternative bases for the federal court's jurisdiction, nor was the complaint devoid of any claim for relief under the statutory law of the forum state, nor had the *plaintiff itself* affirmatively demonstrated the adequacy of a federal forum by choosing to file numerous carbon-copy lawsuits in federal court. Taken together, these factors render comity concerns all but nonexistent and highlight the significant federal interests at stake in this case. In short, given the numerous bases for federal jurisdiction, the substantial federal interests in this case, the absence of comity issues, and the potential for judicial efficiencies through coordination, plaintiff's request that this court abstain from adjudicating this matter lacks any reasonable basis and should be denied.

452 U.S. 394, 405 (U.S. 1981) (Brennan J., dissenting); *see also Greenberg v. Veteran*, 889 F.2d 418, 422 (2d Cir. 1989) (28 U.S.C. § 1441(b) "provides for general federal question removal"); *In re Carter*, 618 F.2d 1093, 1100 (5th Cir. 1980) ("The basic federal question statute is 28 U.S.C. § 1441(b)."); *Wilson v. Doss*, 2009 WL 2567950, at *2 (M.D. Ala. Aug. 14, 2009) ("[S]ection 1441(b) provides the basis of removal for a claim presenting a federal question."). Indeed, the meaning of Section 1441(b) was clearly explained by then-District Court Judge Sotomayor, who clarified that "two separate and distinct removal provisions exist[]" in section 1441(b). *Igolnikov v. Mallah Org., Inc.*, No. 92 CIV 7199 (SS), 1993 WL 227769, at *2 (S.D.N.Y. June 22, 1993). "The first sentence authorizes removal of any action involving a federal claim without regard to the parties' citizenship." *Id.* (citing *Gallagher v. Donald*, 803 F. Supp. 899, 902 (S.D.N.Y. 1992)).

Plaintiff's argument would render a portion of Section 1441(b) superfluous: if 1441(a) and 1441(b) are to be read together, there would be no reason for the first sentence of Section 1441(b) other than to serve as an introduction to the second sentence. And contrary to the long line of cases stating that Section 1441(b) is *the* provision authorizing removal of federal question cases, the interpretation advocated by plaintiff essentially subsumes Section 1441(b) within Section 1441(a), which otherwise provides for removal of all cases in which the district court has original jurisdiction.

In *Gallagher v Donald*, this District expressly rejected precisely that interpretation. 803 F. Supp. at 902-04. The *Gallagher* court noted that while Section 1441(a) addressed both federal question cases and diversity cases, the first sentence of Section 1441(b) was specifically addressed to only federal question cases. Because the "[e]xcept as otherwise" language appears in Section 1441(a) but not Section 1441(b), and because specific provisions generally prevail

21

1441(b) must also apply to cases removed under § 1441(a).[7] *See Eriksen v. Moore Mill & Lumber Co*, 157 F. Supp. 888, 890 (D. Or. 1958). But this reasoning simply applies the noncontroversial principle that the more specific provision of Section 1441(b) (governing diversity removal) must trump the more general provision of Section 1441(a). That same principle requires the conclusion that the more specific provision in the first sentence of Section 1441(b) (governing federal question cases), which admits of no exceptions, must trump the general language of Section 1441(a).

**Second**, plaintiff argues that Section 1441(b) is not applicable because it governs "claims" brought under federal law. Plaintiff contends that its *claims* do not give rise to federal question removal even though Freddie Mac's authorizing statute provides that all *civil actions* to which Freddie Mac is a party "shall be deemed to arise under the laws of the United States." 12 U.S.C. § 1452(f)(2). Freddie Mac's authorizing statute, however, precisely tracks the language of 28 U.S.C. § 1331, and expressly states that it is intended to give district courts original jurisdiction of all Freddie Mac actions. And courts have repeatedly found that the scope of Section 1331 is the same as the scope of Section 1441(b). *See, e.g., Warthman v. Genoa Twp. Bd. Of Trs.*, 549 F.3d 1055, 1061 (6th Cir. 2008) ("'the scope of removal jurisdiction based on the existence of a federal question' is 'identical to the scope of federal question jurisdiction under 28 U.S.C. 1331.'") (quoting *Long v. Bando Mfg. of Am.*, 201 F.3d 754, 758 (6th Cir.

---

[7] The other cases outside the Second Circuit on which plaintiff relies are equally unpersuasive. Plaintiff's citation to *Kelly v. Drake Beam Morin, Inc.*, 695 F. Supp. 354, 356 (E.D. Mich. 1988) (which plaintiff erroneously cites as a case from the Eastern District of New York) is inapposite for the same reason as *Eriksen* – it addressed only the second sentence of Section 1441(b), similarly finding that the specific limitation in that sentence overrode the more general removal provision of Section 1441(a). Plaintiff's footnoted citation to *Highland Crusader Offshore Partners, L.P. v. Motient Corp.*, No. A-06-CA-540 LY, 2006 U.S. Dist. LEXIS 84028, at *11 n.4 (W.D. Tex. Nov. 17, 2006) similarly is unconvincing. In that case, the Texas court dismissed *Gallagher* in a footnote, relying on general language from a treatise not specifically addressing Section 1441(b) and stating that the court could not find any case citing *Gallagher*'s interpretation of the removal statute. Apparently, the Texas court overlooked then-Judge Sotomayor's opinion in *Igolnikov*, which cites *Gallagher*'s interpretation of Section 1441(b) with approval. *See Igolnikov*, 1993 WL 227769, at *2.

Dated:  December 2, 2011                    Respectfully submitted,

                                                        MAYER BROWN LLP

                                                       By: /s/ Richard A. Spehr
                                                       Richard A. Spehr
                                                       Michael O. Ware
                                                       S. Christopher Provenzano
                                                       1675 Broadway
                                                       New York, NY  10019-5820
                                                       Telephone:  212-506-2500
                                                       Facsimile:  212-262-1910
                                                       rspehr@mayerbrown.com
                                                       mware@mayerbrown.com
                                                       cprovenzano@mayerbrown.com

                                                       *Attorneys for Ally Financial Inc., GMAC Mortgage Group, Inc., Residential Capital LLC, GMAC-RFC Holding Company, LLC, Residential Funding Company, LLC, Ally Securities, LLC, Residential Asset Mortgage Products, Inc., Residential Asset Securities Corporation, and Residential Accredit Loans, Inc.*

AMECURRENT 700835974.10 02-Dec-11