```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
FEDERAL HOUSING FINANCE AGENCY, etc.,   :
                                        :
                    Plaintiff,          :
            -v-                         :   11 Civ. 7010 (DLC)
                                        :
ALLY FINANCIAL INC., et al.,            :   OPINION & ORDER
                                        :
                    Defendants.         :
                                        :
----------------------------------------X
```

APPEARANCES:
For Plaintiff Federal Housing Finance Agency:
Marc E. Kasowitz
Hector Torres
Christopher P. Johnson
Michael A. Hanin
Kanchana Wangkeo Leung
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019

For Defendants Ally Financial Inc. and
GMAC Mortgage Group, LLC:
Richard A. Spehr
Michael O. Ware
Mayer Brown LLP
1675 Broadway
New York, New York 10019

For Defendant Ally Securities, LLC
Matthew Solum
Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022

Robert J. Kopecky
Devon M. Largio
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654

Jeffrey A. Lipps
Jennifer A.L. Battle
Carpenter Lipps & Leland LLP
280 North High Street, Suite 1300
Columbus, Ohio 43215

For Defendant Barclays Capital:
David H. Braff
Brian T. Frawley
Jeffrey T. Scott
Joshua Fritsch
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004

For Defendant Citigroup Global Markets Inc.:
Brad S. Karp
Susanna M. Buergel
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064

For Defendant Credit Suisse Securities (USA) LLC:
Richard W. Clary
Michael T. Reynolds
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, New York 10019

For Defendant Goldman Sachs:
Richard H. Klapper
Theodore Edelman
Michael T. Tomaino, Jr.
Jordan T. Razza
125 Broad Street
New York, NY 10004-2498

For Defendant JPMorgan Securities LLC:
Penny Shane
Sharon L. Nelles
Jonathan M. Sedlak
Yavar Bathaee
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004-2498

```
For Defendant RBS Securities Inc.:
Thomas C. Rice
David J. Woll
Alan Turner
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York 10017

For Defendant UBS Securities LLC:
Jay B. Kasner
Scott D. Musoff
Robert A. Fumerton
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036
```

DENISE COTE, District Judge:

This is one of sixteen actions currently before this Court in which the Federal Housing Finance Agency ("FHFA" or "the Agency"), as conservator for Fannie Mae and Freddie Mac (together, the "Government Sponsored Enterprises" or "GSEs"), alleges misconduct on the part of the nation's largest financial institutions in connection with the offer and sale of certain mortgage-backed securities purchased by the GSEs in the period between 2005 and 2007.[1]  As amended, the complaints in each of

---

[1] The sixteen cases are: <u>FHFA v. UBS Americas, Inc., et al.</u>, 11 Civ. 5201 (DLC); <u>FHFA v. JPMorgan Chase & Co., et al.</u>, 11 Civ. 6188 (DLC); <u>FHFA v. HSBC North America Holdings, Inc., et al.</u>, 11 Civ. 6189 (DLC); <u>FHFA v. Barclays Bank PLC, et al.</u>, 11 Civ 6190 (DLC); <u>FHFA v. Deutsche Bank AG, et al.</u>, 11 Civ. 6192 (DLC); <u>FHFA v. First Horizon National Corp., et al.</u>, 11 Civ 6193 (DLC); <u>FHFA v. Bank of America Corp., et al.</u>, 11 Civ. 6195 (DLC); <u>FHFA v. Citigroup Inc., et al.</u>, 11 Civ. 6196 (DLC); <u>FHFA v. Goldman, Sachs & Co., et al.</u>, 11 Civ. 6198 (DLC); <u>FHFA v. Credit Suisse Holdings (USA), Inc., et al.</u>, 11 Civ. 6200 (DLC); <u>FHFA v. Nomura Holding America, Inc., et al.</u>, 11 Civ. 6201

the FHFA actions assert that the Offering Documents used to market and sell Residential Mortgage-Backed Securities ("RMBS") to one or both of the GSEs during the relevant period contained material misstatements or omissions with respect to the owner-occupancy status, loan-to-value ("LTV") ratio, and underwriting standards that characterized the underlying mortgages.  On the basis of these allegations, the complaints assert claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, l(a)(2), o; the Virginia Securities Act, VA Code Ann. § 13.1-522(A)(ii), (C); and the District of Columbia Securities Act, D.C. Code § 31-5606.05(a)(1)(B), (c).  In six of the cases, including this one, the Agency has also asserted common law claims of fraud and aiding and abetting fraud against certain entity defendants (the "Fraud Claim Cases").  As pleaded, these fraud claims attach to each of the three

---

(DLC); FHFA v. Merrill Lynch & Co., Inc., et al., 11 Civ. 6202 (DLC); FHFA v. SG Americas, Inc., et al., 11 Civ. 6203 (DLC); FHFA v. Morgan Stanley, et al., 11 Civ. 6739 (DLC); FHFA v. Ally Financial Inc., et al., 11 Civ. 7010 (DLC); FHFA v. General Electric Co., et al, 11 Civ. 7048 (DLC).  The FHFA has also brought two similar actions, which are pending in federal courts in California and Connecticut.  See FHFA v. Countrywide Financial Corp., et al., No. 12 Civ. 1059 (MRP) (C.D. Cal.); FHFA v. Royal Bank of Scotland, No. 11 Civ. 1383 (AWT) (D. Conn).

categories of misstatements upon which the plaintiff's securities law claims are based.[2]

The Court has already issued several Opinions addressing motions to dismiss in other cases brought by the FHFA.[3] Familiarity with those Opinions is assumed; all capitalized terms have the meanings previously assigned to them.

Following this Court's decision of the motion to dismiss in FHFA v. UBS, discovery began in all of the coordinated cases. Briefing of defendants' motions to dismiss in the remaining fifteen cases has occurred in two phases, with the motions in this case and the other Fraud Claim Cases becoming fully

---

[2] As noted in previous Opinions, the plaintiff also pleads defendants' statements regarding the credit ratings of the Certificates as a separate category of misstatement under the Securities Act and, in the cases with fraud claims, fraudulent representation.  The plaintiff's claims in this respect are largely derivative of the three core representations described above.

[3] FHFA v. UBS Americas, Inc. et al., 858 F. Supp. 2d 306 (S.D.N.Y. 2012) ("UBS I"); FHFA v. UBS Americas, Inc., et al., No. 11 Civ. 5201 (DLC), 2012 WL 2400263 (S.D.N.Y. June 26, 2012) ("UBS II"); FHFA v. JPMorgan Chase & Co., et al., No. 11 Civ. 7188 (DLC), 2012 WL 5395646 (S.D.N.Y. Nov. 5, 2012) ("Chase"); FHFA v. Merrill Lynch & Co., et al., No. 11 Civ. 6202 (DLC), 2012 WL 5351188 (S.D.N.Y. Nov. 8, 2012) ("Merrill"); FHFA v. Deutsche Bank, et al., No. 11 Civ. 6192 (DLC), 2012 WL 5471864 (S.D.N.Y. Nov. 12, 2012) ("Deutsche Bank"); FHFA v. Goldman Sachs & Co, et al., No. 11 Civ. 6198, 2012 WL 5494923 (S.D.N.Y. Nov. 12, 2012) ("Goldman"); FHFA v. Barclays Bank PLC, et al., No. 11 Civ. 6190 (DLC), 2012 WL 5844189 (S.D.N.Y. Nov. 19, 2012) ("Barclays"); FHFA v. Morgan Stanley, No. 11 Civ. 6739 (DLC), 2012 WL 5868300 (S.D.N.Y. Nov. 19, 2012); FHFA v. Bank of America, No. 11 Civ. 6195 (DLC), slip op. (S.D.N.Y. Dec. 18, 2012).

submitted on October 11, 2012.  The motions in the remaining nine cases were fully submitted November 9, 2012.  Depositions are to begin in all cases in January 2013, and all fact discovery in this matter, 11 Civ. 7010 (DLC), must be concluded by December 6, 2013.  Trial in this matter is scheduled to begin in January 2015 as part of the fourth tranche of trials in these coordinated actions.

DISCUSSION

This case concerns RMBS Certificates allegedly purchased by Freddie Mac between September 2005 and May 2007.  Each of the GSE Certificates pertains to one of 21 securitizations offered for sale pursuant to one of six shelf-registration statements. Each of the 21 securitizations was sponsored by non-party Residential Funding Company, LLC, formerly known as Residential Funding Corporation ("RFC" or the "ResCap Sponsor").  As alleged in the complaint, RFC is an indirect, wholly-owned subsidiary of defendant GMAC Mortgage Group, Inc. ("GMACM"), which is, in turn, a wholly-owned subsidiary of Ally Financial Inc. ("AFI"), the lead defendant in this case.  The following non-parties, all of which are wholly owned, indirect subsidiaries of GMACM and AFI, acted as depositors for the 21 securitizations: Residential Asset Mortgage Products, Inc. ("RAMP"), Residential Asset Securities Corporation ("RASC"), Residential Accredit Loans,

Inc. ("RALI") (collectively, the "ResCap Depositors").  RFC, RAMP, RASC, and RALI were originally named as defendants in this action, but were released as defendants after they filed for bankruptcy protection along with their indirect parent company Residential Capital LLC ("ResCap").  In addition to the ways already discussed, AFI affiliates are alleged to have been involved in the securitization process through defendant Ally Securities, LLC ("Ally Securities"), a wholly-owned subsidiary of AFI that served as the co-lead underwriter for five of the securitizations and was an underwriter for an additional eight of them.

    The Amended Complaint asserts securities law claims against AFI and GMACM as well as the following banks, which served as underwriter or co-lead underwriter for one or more of the 21 securitizations but are not otherwise affiliated with AFI: Barclays Capital Inc. ("Barclays"), Citigroup Global Markets Inc. ("Citi"), Credit Suisse Securities (USA) LLC ("Credit Suisse"), Goldman, Sachs & Co. ("Goldman"), JPMorgan Securities, LLC -- in its own right and as successor-in-interest to Bear Stearns Companies, Inc. ("BSC") -- ("JPMS"), RBS Securities Inc. ("RBS"), and UBS Securities LLC ("UBS").  The plaintiff's fraud-related claims are asserted only against AFI, JPMS (in its own right and as successor-in-interest to BSC), Goldman, and GMACM (collectively, "the fraud defendants").

The following five groups of defendants have each filed separate motions to dismiss the Amended Complaint: 1) AFI and GMACM; 2) Ally Securities; 3) RBS; 4) Goldman; and 5) a group consisting of the remaining underwriter defendants. The motions press a number of arguments that are also pressed by other defendants in these coordinated actions, the majority of which have been addressed by this Court's previous Opinions. The Court hereby adopts by reference the reasoning and, to the extent they are relevant here, the rulings of those prior Opinions.[4]

I.  Adequacy of Fraud Allegations Against Underwriter Defendants

As in other cases filed by this plaintiff, several of the motions to dismiss devote particular attention to the adequacy of the FHFA's scienter allegations. To be sure, each of these coordinated actions must be considered on its own bottom. The roles of these defendants in the RMBS securitization process and their familiarity with it differ from each other and from those of defendants in other cases in material respects. The plaintiff's allegations in support of its fraud claims differ accordingly. Nonetheless, an independent review of the plaintiff's allegations in this case compels an outcome similar

---

[4] As in other cases, the plaintiff has abandoned its Virginia Blue Sky claims with regard to securitizations it purchased before September 6, 2006. Accordingly, these claims are dismissed.

to those this Court has reached in previous Opinions in this litigation.

With respect to JPMS and Goldman in particular, the Amended Complaint in this case largely repeats allegations that the Court has already found sufficient to plead fraud-based claims against these defendants and their corporate affiliates in other cases brought by the plaintiff.  See Chase, 2012 WL 5395646, *11-14; Goldman, 2012 WL 5494923, *2.  As the brief for JPMS notes, certain of these allegations pertain to activities by those affiliates of the banks that sponsored or served as depositors for securitizations other than those at issue here.  Those allegations have limited relevance here, where the securitizations at issue were almost exclusively packaged by AFI affiliates.  Other allegations, however, provide a strong basis for inferring that the banks acted knowingly or recklessly in continuing to underwrite RMBS offerings backed by mortgages that failed to conform to stated guidelines.  In particular, the Amended Complaint cites the waiver rates in the Clayton Report and defendants' own statements regarding the due diligence they performed on the supporting loans pools for these very securitizations to assert that, to the extent JPMS, BSC, and Goldman were ignorant of the fact that a substantial number of the supporting loans were not originated according to stated

guidelines, it was only because they consciously disregarded that risk.

As to Ally Securities, it is likewise true that, given the firm's representations that it reviewed portions of the loan pool for compliance with guidelines, the high defect rate alleged in the Amended Complaint is strongly suggestive that the firm knew the loans were underwritten to standards lower than those reported in the Offering Documents.  This allegation is further buttressed by FHFA's allegations that Ally Securities was strongly motivated to disregard loan defects in order to benefit itself and its corporate affiliates and had particular insight into the quality of the supporting loans given the role its corporate affiliates played in originating, purchasing, and securitizing those loans.

As in Chase, these allegations are more than adequate to plead fraud with respect to the Offering Documents' representations regarding mortgage-underwriting standards. Chase, 2012 WL 5395646, at *11-14.  But because these allegations do not bear on defendants' knowledge that their statements regarding LTV and owner-occupancy fraud in particular were false, see Merrill, 2012 WL 5451188, at *2, the plaintiff's claims based on those two categories of statements must be dismissed.

AFI's motion to dismiss also raises several arguments that are not fully addressed by prior Opinions in this litigation. Those arguments will be addressed in turn.

II.  Control-Person Allegations Against AFI

First, AFI argues that the Amended Complaint's allegations are insufficient to support the plaintiff's control-person claims against it and GMACM.  Section 15 of the Securities Act and its state law equivalents impose liability on "[e]very person who, by or through stock ownership, agency, or otherwise . . . controls any person liable under [Section 11] or [Section 12]."  15 U.S.C. § 77o.  The plaintiff's control-person claims against AFI and GMACM are premised on alleged primary violations of Sections 11 and 12(a)(2) by Ally Securities, the ResCap Sponsor, and the ResCap Depositors.[5]

In prior Opinions in this litigation, this Court has repeatedly rejected arguments like AFI's where, as here, the Amended Complaint alleged that the putative control party (1) exercised direction and control over a vertically integrated structure of wholly owned subsidiaries that sold the Certificates, (2) shared officers and directors with those subsidiaries, (3) supplied them with essential services and financial support, and (4) profited substantially from this

---

[5] The Agency's claims of aiding and abetting fraud against AFI and GMACM are likewise based on allegations of primary fraud by Ally Securities, the ResCap Sponsor, and the ResCap Depositors.

11

vertically integrated approach to the securitization process. See, e.g., UBS I, 858 F.Supp.2d at 333.  AFI argues, however, that an operating agreement entered into between AFI and ResCap in June 2005 (the "Operating Agreement") demonstrates as a matter of law that AFI and GMACM did not exercise control over the ResCap Sponsor and the ResCap Depositors during the period that the securitizations at issue were sold.  AFI argues that the Operating Agreement may be considered on this motion to dismiss because it is incorporated by reference into the Amended Complaint.

As AFI notes, the Operating Agreement provides, inter alia, that:

- ResCap was prohibited from paying dividends or other distributions to AFI unless ResCap's stockholder equity reached $6.5 billion;

- ResCap was to have at least two directors who were independent of AFI, one of which would chair ResCap's Audit Committee;

- ResCap was prohibited from engaging in financial transactions with AFI affiliates unless the transaction was on terms that would be agreed to between parties negotiating at arms length;

- ResCap was obligated to maintain books and records separate from those of any other AFI affiliate;

- ResCap was to maintain a corporate identity separate from that of AFI, and its employees and officers were prohibited from also being officers of AFI or GMACM.

AFI maintains that, taken together, these requirements defeat any suggestion that AFI or GMACM controlled the operations of ResCap or its subsidiary entities.

The Amended Complaint contains allegations, however, that call into question the appearance of independence that might be conveyed by the Operating Agreement in isolation.  For example, the Amended Complaint quotes the following statement from a registration statement filed by ResCap in July 2005, only one month after the Operating Agreement was executed:

> [AFI] control[s] all fundamental matters affecting [ResCap] . . . [AFI] indirectly owns all of [ResCap's] outstanding common stock and has the power to elect and remove all of [ResCap's] directors, including the two independent directors.

And while the Amended Complaint does not allege that AFI violated the Operating Agreement's prohibition on its officers' simultaneously serving as officers of ResCap or its subsidiaries, the Amended Complaint does allege that in several instances officers of AFI served on the board of ResCap or its subsidiaries.

It may be the case that, whether because of the Operating Agreement or for other reasons, the involvement of AFI and GMACM in ResCap's securitization activities was not sufficient to give rise to control-person liability.  But the terms of the Operating Agreement are not so unambiguous, when read in light of the plaintiff's allegations in support of its Section 15

claims, to permit such a finding as a matter of law.  Moreover, AFI's effort to obtain dismissal of the plaintiff's aiding-and-abetting fraud claims likewise fails in light of the analysis above.

II. Demand for Punitive Damages

AFI and GMACM also seek to strike the plaintiff's demand for punitive damages as to them.  As a threshold matter, they argue that the availability such relief is an issue governed by the law of Michigan -- where both AFI and GMACM have their headquarters.

Although AFI accepts that its liability on the plaintiff's aiding-and-abetting fraud claims is an issue of New York law, it argues that the damages component of those claims is governed by the law of Michigan.  The choice-of-law issue is significant, since "punitive damages are available under Michigan law only when expressly authorized by [that state's] Legislature." Gilbert v. DaimlerChrysler Corp., 685 N.W.2d 391, 400 (Mich. 2004).  New York and Minnesota, where the plaintiff asserts the underlying fraud took place, impose no such limitation.

As explained in previous Opinions, FHFA's common law claims are governed by New York choice-of-law principles pursuant to Klaxon co. v. Stentor Elec. Mfg. Co, 313 U.S. 487, 496-97 (1941).  New York embraces a choice-of-law doctrine known as dépeçage, pursuant to which "the rules of one legal system are

applied to regulate certain issues arising from a given transaction or occurrence, while those of another system regulate the other issues." Hunter v. Greene, 734 F.2d 896, 901 (2d Cir. 1984) (citation omitted).  The New York Court of Appeals has recognized that the doctrine may sometimes require that a plaintiff's demand for punitive damages be analyzed under the law of a state other than the one under whose law the cause of action arises.  See James v. Powell, 225 N.E.2d 741, 746-47 (N.Y. 1967).  A court must consider "the object or purpose of the wrongdoing," and give controlling effect to the "law of the jurisdiction with the strongest interest in the resolution of the particular issue presented."  Id. (citation omitted); see also Restatement (Second) of Conflict of Laws § 171 cmt. c & Reporters Note (1971) (citing Powell for the proposition that "situations may arise where one state has the dominant interest with respect to the issue of compensatory damages and another state has the dominant interest with respect to the issue of exemplary damages.")

In this case, the plaintiff alleges that the purpose of AFI and GMACM's aiding and abetting activity was to enable the fraudulent activities of the entities whose primary conduct is at issue -- Ally Securities, the ResCap Sponsor, and the ResCap Depositors.  That fraudulent activity was participation in the creation of SEC filings containing misrepresentations and the

15

sale of Certificates through those filings.  It can hardly be disputed that New York and Minnesota, within whose borders the primary conduct allegedly took place, have a stronger interest in deterring such facilitation than does Michigan.  The law of those states therefore governs the plaintiff's demand for punitive damages. Finally, because the Court has already determined that allegations of the type the plaintiff makes here are sufficient to sustain a demand for punitive damages under New York law, and because Minnesota law is not materially different in this respect, AFI's motion to strike must be denied.

## CONCLUSION

The defendants' July 13 motions to dismiss are granted with respect to:

- Plaintiff's claims of owner-occupancy and LTV-ratio fraud;
- Plaintiff's Virginia Securities Act claims for Certificates purchased before September 6, 2006;
- Plaintiff's Virginia Securities Act claims against Ally Securities, Barclays, and Credit Suisse with respect to Certificates purchased from other parties and attendant control-person claims.

- Plaintiff's Section 12(a)(2) claims against Ally Securities and RBS in connection with Certificates purchased from other parties and attendant control-person claims.

The motions to dismiss are denied in all other respects.


SO ORDERED:

Dated:    New York, New York
          December 19, 2012

                                    _____
                                            DENISE COTE
                                    United States District Judge