# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

**MEMO ENDORSED**

FOUR TIMES SQUARE

NEW YORK 10036-6522

———

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL

(212) 735-2358

DIRECT FAX

(917) 777-2358

EMAIL ADDRESS

JOSEPH.SACCA@SKADDEN.COM

May 30, 2013

*[handwritten, in background stamp]* ...UMENT ...TRONICALLY ... 6/17/13

*[handwritten endorsement:]* Denied. As explained in the June 5 letter from FHFA, this information is not currently accessible.

*[signed]* Denise Cote

June 17, 2013

**BY E-MAIL**

Hon. Denise L. Cote

United States District Judge

500 Pearl Street, Room 1610

New York, New York 10007-1312

           RE:     FHFA Actions

Dear Judge Cote:

On behalf of defendants in the above-referenced action ("Defendants"), we write to request that the Court order FHFA to produce functional copies of or access to all versions of the models, tools, and other systems (the "Models") Fannie Mae and Freddie Mac (the "GSEs") used in connection with their purchases of PLS during the period 2005 through 2007 in a form sufficient to reveal the inputs and assumptions incorporated into the Models. The Models are relevant to critical elements of FHFA's claims and Defendants' defenses, including loss causation. The parties are at an impasse.

During the GSE 30(b)(6) depositions, deponents identified various Models that played crucial, if not dispositive, roles in decisions to purchase PLS. For example, during the Fannie Mae 30(b)(6) deposition, Francisco Gonzalez-Rey confirmed that traders relied on Models in making decisions to purchase PLS, including "Intex GUI" and "TAC." *See* Ex. A, 30(b)(6) Tr. of F. Gonzalez-Rey, 24:6-23; *see also* Ex. B, 30(b)(6) Tr. of D. Cook, 100:5-15 (traders used TAC in connection with PLS purchase decisions). Gonzalez-Rey also testified that Fannie Mae's Capital Markets Strategy group employed "a number of models that were used to project collateral performance and a number of Models used to project some drivers that drive the performance of the collateral" in making recommendations whether to buy PLS. *See* Ex. A, 30(b)(6) Tr. of F. Gonzalez-Rey, 22:11-14; *id.* 32:7-23. According to Gonzalez-Rey, these Models included a prepay model, a default model, and a severity model that were housed in a system called at one point "ABS deal analytics." *Id.* 33:5-34:2.

Lin Cao, a current Fannie Mae employee, confirmed during her recent deposition the critical role Fannie Mae Models played in purchasing PLS. Cao was an analyst in Capital Markets Strategy who "analyze[d] risks and returns" of PLS as part of the purchase process during the relevant time

Hon. Denise L. Cote
May 30, 2013
Page 2

period. *See* Ex. C, Tr. of L. Cao, 67:2-6; 49:13-50:3. Cao relied on Fannie Mae's Models to "provide[] detailed analysis on the risk and returns" for PLS Fannie Mae was interested in purchasing. *Id.* 74:10-12; *see also id.* 89:17-18 (in doing her job, she "relied on what the model tells [her]"); *see also id.* 295:21-24 ("My role, you know, is for getting the loan level data and then work through our models and pay attention to what the model is telling me."). Cao used Models to stress test securities under different scenarios, and to estimate relative risk and expected losses. *Id.* 113:9-22; Ex. D, Tr. of L. Cao, 704:22-705:13.

Additionally, Cao repeatedly identified the Models as sources of information regarding inputs and outputs. For example, she was unable to recall each specific loan-level data field considered in connection with PLS purchases, but testified that those fields were loaded into Fannie Mae Models. *See* Ex. C, Tr. of L. Cao, 94:9-95:19. She also testified that Fannie Mae's Models provided information regarding returns and credit enhancements. *Id.* 89:25-90:5.

Similarly, during the Freddie Mac 30(b)(6) deposition, Jonathan Veum identified several key Models used in connection with the purchase of PLS during this time period, including "a prepayment model" and "a model known as subprime DEFCAP." *See* Ex. E, 30(b)(6) Tr. of J. Veum, 28:6-19; *see also* Ex. F, 30(b)(6) Tr. of D. Corley, 89:2-6 ("[traders] worked together with the portfolio management and pricing area on the outcome of their [DEFCAP] matrix analysis to look at the collateral composition"). Veum also testified that Freddie Mac Models included drivers of mortgage defaults. Ex. E, 30(b)(6) Tr. of J. Veum, 49:3-15. Donna Corley testified that Freddie Mac used prepay Models to evaluate different types of collateral in a PLS deal. Ex. F, 30(b)(6) Tr. of D. Corley, 174:9-15.

Corley also testified that Freddie Mac traders used tools called Mortgage Pricer and Derivative Solutions, as well as a tool or tools to calculate return on equity, in making decisions with respect to PLS purchases. *See* Ex. F, 30(b)(6) Tr. of D. Corley, 88:10-18; 117:18-118:04. Corley described Mortgage Pricer as "the interface that allows a portfolio manager to run our models to be able to analyze bonds, to help make an investment decision." *See id.* 88:12-16. Derivative Solutions was a predecessor to Mortgage Pricer. *See id.* 125:5-21; 115:15-22.

Obtaining functioning copies of or access to the Models is critical not only to understanding how and why the GSEs made their purchase decisions – relevant to, *inter alia*, FHFA's burden of proving that the GSEs reasonably relied on supposed misstatements in support of its fraud claims – but also vital to the Defendants' defenses, including loss causation. For example, the GSEs used Models to project under what circumstances and to what extent securities would incur losses, using the GSEs' assumptions concerning market and economic conditions, such as the future direction of home prices. Access to the Models would allow the Defendants to recreate the GSEs' analysis using actual market and economic conditions, including the true movement of home prices, to demonstrate that any losses were the result of those macro-economic events and not any purported misstatements in the offering documents. FHFA's refusal to produce functioning copies of the Models denies the Defendants relevant and discoverable information.

We are available at the Court's convenience.

Hon. Denise L. Cote
May 30, 2013
Page 3

Respectfully,

Joseph N. Sacca

cc: All counsel of record (by e-mail)